Filed 1/8/15  Whang v. Dr. Midas Beverly Hills CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| KYUNG JA WHANG, | B254316 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC482619) |
| v. | |
| DR. MIDAS BEVERLY HILLS, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Samantha Jessner, Judge.  Reversed.

Law Offices of Baird A. Brown, PC, Baird A. Brown for Plaintiff and Appellant.

Green & Hall, Robert L. Green and Jonathan M. Slipp for Defendant and Respondent.

\* \* \* \* \* \* \* \*

Plaintiff Kyung Ja Whang (plaintiff) sued defendant Dr. Midas Medical Group, Inc. (defendant) for medical malpractice one year and five days after she underwent an outpatient procedure consisting of an injection in her nose. The trial court entered summary judgment in favor of defendant, ruling that plaintiff knew or should have known within four days of the procedure that the pain, swelling and discoloration which she experienced following the injection was caused by defendant's negligence. We do not agree, and so reverse the judgment.

FACTUAL AND PROCEDURAL SUMMARY

On January 5, 2011, defendant performed a minor cosmetic procedure – an injection of Radiesse to the tip of the nose – on plaintiff at its offices. Prior to the procedure, plaintiff was informed that she might experience pain, redness and swelling for approximately two weeks following the procedure.

Plaintiff complained of pain immediately after receiving the injection, and observed purple bruises and a swollen nose. She continued to experience extreme pain and an abnormal-looking nose throughout the next week. On Saturday, January 8, defendant's office manager, Jenny Jin, called plaintiff to inquire how she was doing. When plaintiff replied that she continued to be in great pain, she was told, "Everybody goes through it for two weeks." In anger and frustration, plaintiff pressed Ms. Jin for relief from the pain; Ms. Jin said, "Then go to a doctor – any doctor there." As it was the weekend, plaintiff was not able to see a doctor until the following Monday.

On Monday, January 10, 2011, plaintiff saw a dermatologist unaffiliated with defendant. The next day, she returned to defendant's office, and was told by one of its physicians, Dr. Tang, to go to the emergency room; plaintiff did so. On January 12, plaintiff again saw Dr. Tang, who performed nose surgery on her the following day, January 13.

On January 10, 2012, pursuant to Code of Civil Procedure section 364, plaintiff's lawyer delivered a letter to defendant giving it notice of intent to commence an action arising from the injection administered by defendant within 90 days, thereby extending

2

the statute of limitations an additional 90 days. Plaintiff filed her complaint against defendant for medical malpractice on April 10, 2012.

Defendant moved for summary judgment, contending that the undisputed facts established that plaintiff had "notice or information of circumstances to put a reasonable person on inquiry" of her injury and its negligent cause no later than January 9, 2011, or four days after the procedure. It therefore asserted that the statute of limitations had expired on January 9, 2012, rendering nugatory Code of Civil Procedure section 364's extension of the limitations period. The trial court agreed, and granted the motion. Judgment in favor of defendant was subsequently entered.

Plaintiff timely appealed the judgment, challenging the trial court's ruling that the action was time-barred.


DISCUSSION

"On appeal from a summary judgment, our task is to independently determine whether an issue of material fact exists and whether the moving party is entitled to summary judgment as a matter of law. [Citation.] 'We independently review the parties' papers supporting and opposing the motion, using the same method of analysis as the trial court. Essentially, we assume the role of the trial court and apply the same rules and standards.' [Citation.] We apply the same three-step analysis required of the trial court. First, we identify the issues framed by the pleadings since it is these allegations to which the motion must respond. Second, we determine whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in the moving party's favor. When a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable issue of material fact. [Citations.] In so doing, we liberally construe the opposing party's evidence, strictly construe the moving party's evidence, and resolve all doubts in favor of the opposing party. [Citations.]" (*Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 493-494.) "The drastic remedy of

3

summary judgment may not be granted unless reasonable minds can draw only one conclusion from the evidence." (*Enfield v. Hunt* (1979) 91 Cal.App.3d 417, 419-420.)

The statute of limitations applicable to this medical malpractice action is "one year after the plaintiff discover[ed], or through the use of reasonable diligence should have discovered, the injury. . . ." (Code Civ. Proc., § 340.5.) The limitations period "does not commence to run until the patient is reasonably aware not only of the physical manifestation of her injury but the negligent cause as well." (*Hills v. Aronsohn* (1984) 152 Cal.App.3d 753, 759; see also, *Unjian v. Berman* (1989) 208 Cal.App.3d 881, 885; *Artal v. Allen* (2003) 111 Cal.App.4th 273, 279.) "Whether a plaintiff has exercised reasonable diligence necessarily depends on the facts of the individual case." (*Artal v. Allen*, *supra*, 111 Cal.App.4th at p. 279.) "Finally, there appears to be no doubt that a medical malpractice plaintiff has the right to a jury trial on factual issues relevant to the defense, among others, of the date of accrual for purposes of the statute of limitations." (*Jefferson v. County of Kern* (2002) 98 Cal.App.4th 606, 619.)

Plaintiff contends that she knew of the physical manifestation of her injury shortly after the procedure concluded on January 5, 2011, but she did not know, and "could not possibly have known," that her injury was caused by defendant's negligence until sometime after January 9, 2011. "All she knew before then was that the Radiesse injection was painful and that her nose was swollen and discolored."

Quoting *Knowles v. Superior Court* (2004) 118 Cal.App.4th 1290, defendant counters that "a person need not *know* of the actual negligent cause of the injury; mere *suspicion* of negligence suffices to trigger the limitation period." (*Id.* at p. 1295.) Defendant cites plaintiff's deposition testimony in which she describes the intense pain she experienced from the time of the procedure on Wednesday, January 5 and for the next four days. Plaintiff testified to extreme discoloration of her nose and said that her skin looked like it was "rotting." When during a phone call on Saturday, January 8, plaintiff "got mad" at Ms. Jin, defendant's office manager, she was told to "see any doctor."

4

Defendant concludes from the foregoing that plaintiff's "suspicions were undeniably aroused during this period (January 5-9, 2011), both by her own recognition of her symptoms and by [Ms. Jin]'s advice to seek immediate medical care."

If as defendant argues plaintiff's suspicions were undeniably aroused, then summary judgment arguably would have been appropriate. However, defendant does not cite plaintiff's testimony that she suspected that her post-procedure pain and discomfort were due to defendant's negligence, but rather is relying on an inference to that effect, and points to two facts which support that inference. This is not, however, the only inference which may be drawn from the evidence before the court. As the trial court itself recognized, weighing against this inference is "the fact that Defendant told Plaintiff her face would likely be red, swollen, and painful for approximately two weeks after the injection."[1] Thus, plaintiff reasonably may have believed that, although her post-procedure condition was substantially more debilitating than she had anticipated, the side effects she was experiencing were not the result of defendant's negligence. "Summary judgment cannot be granted on the basis of reasonable inferences deducible from the evidence if contradicted by other reasonable inferences. (Code Civ. Proc., § 437c, subd. (c); *Gilbertson v. Osman* (1986) 185 Cal.App.3d 308, 318.)" (*Unjian v. Berman, supra,* 208 Cal.App.3d 881, 884.)

In sum, "[t]he drastic remedy of summary judgment may not be granted unless reasonable minds can draw only one conclusion from the evidence." (*Enfield v. Hunt,*

---

[1] The trial court also found that "the undisputed facts show that Plaintiff, prior to 1/10/11, had ceased trusting in Defendant." Not only is this not an undisputed fact (it is an inference drawn from undisputed facts), but it is hard to square with plaintiff's actions in returning to defendant on January 11, 12 and 13, and permitting Dr. Tang to perform a further surgical procedure on her on January 13.

*supra,* 91 Cal.App.3d at pp. 419-420.)  Because the evidence here supports multiple conclusions, summary judgment was improperly granted.

DISPOSITION

The judgment is reversed.  Plaintiff is to recover her costs of appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

GOODMAN, J.[*]

We concur:

TURNER,  P. J.

KRIEGLER, J.

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.